The first case on today's docket is cause number 21-40557, United States of America v. Esteban Ramirez. Is the appellant ready to proceed? May it please the court, Katie Shepard for Mr. Esteban Ramirez. The issue in this case is whether the district court misapplied the sentencing guidelines. The court applied the reckless endangerment enhancement under 2L1.1B6, and that was reversible plane error for three reasons. First, the three facts listed in PSR paragraph 26 clearly can't justify the enhancement under this court's precedent. Second, the facts related to the flight from law enforcement can't justify the enhancement because the guidelines commentary prohibits double counting, and the district court applied a separate adjustment for reckless endangerment during flight. And third, none of the other facts in the PSR can justify the enhancement because they were present in other cases where this court reversed or they're not inherently dangerous practices. First, under this court's precedent in Solis Garcia, Rodriguez, and Castello-Palma, the three facts in paragraph 26 clearly can't justify the enhancement. Those facts are that there were six people in a five-person sedan, the backseat passengers weren't wearing seatbelts, and one of the backseat passengers was lying across the other three. And those are virtually the same facts that this court held were insufficient to apply the enhancement in Solis Garcia. There were seven people in a minivan with four seats, and four people were lying side by side in the cargo area. In Rodriguez, there were three people who were stacked in the cargo area of a Ford Explorer, and in Castello-Palma, there were nine people in a seven-person Ford Explorer, and in each of those cases, the court reversed application of the B6 enhancement. The court has also reached that same conclusion in the unpublished case of Rocha, where there were six people in the cab of a pickup designed for five, and then also more recently in Hernandez, there were three extra people in an SUV, and some of the people were stacked unrestrained in the passenger area, and notably in that case, the court found that there was plain error in applying the B6 enhancement. So under all of these cases, PSR paragraph 26 is clearly wrong. So the question becomes whether there's other facts in the record that might support this enhancement for this court to affirm on another ground. The facts related to the flight from law enforcement can't be used to justify the B6 enhancement because the guidelines commentary prohibits double counting, and in PSR paragraph 30, the district court imposed a separate adjustment under 3C1.2 for reckless endangerment during flight, and although the general rule is that the guidelines allow double counting unless it's expressly prohibited, here we have application note 3 to 2L1.1, which expressly prohibits double counting. That note says that if B6 applies solely based on conduct related to flight, don't apply 3C1.2. So since the district court applied 3C1.2, those facts related to flight can't be used to justify the B6 enhancement. So then we have the other facts in the PSR, and those can't be used to justify the enhancement either because they were present in other cases where this court reversed, or they're not inherently dangerous practices. So the government has pointed to facts like it being at night, or the highway speeds, or the vehicle being heavily laden, or the fact that Mr. Ramirez didn't have a driver's license, but all of those facts were present in other cases. So in Solis-Garcia, there were highway speeds and the vehicle was heavily loaded. In Rodriguez, it was also highway speeds and the transportation was happening at night. And in Costello-Palma, that was also at night and the driver didn't have a driver's license. So because those facts were present in those other cases where the court didn't apply the enhancement, they can't be used to apply the enhancement in this case. There are other facts that the government points to that really were giving Border Patrol reasonable suspicion to do an immigration inspection, but they weren't actually inherently dangerous. And in Solis-Garcia and other cases, this court has said that the conduct has to pose an inherently dangerous risk to the passengers. And the purpose of the B6 enhancement is to impose additional punishment on people who are committing a smuggling or transporting offense in a particular manner that involves inherently dangerous practices. And none of the other facts were inherently dangerous in this case, especially because the record shows that the conditions were dry, there was light traffic, and the speed limit was 75 miles per hour. One of the facts the government has pointed to is the abnormal bounce. And that's really related to the vehicle being heavily laden. The criminal complaint is at page 9 of the record, and the agent described it as he noticed that the Avenger had an abnormal bounce, as if the Avenger was being weighed down. So again, we had a heavily loaded vehicle in Solis-Garcia, and that wasn't enough. So that wouldn't be enough in this case either. The government has also mentioned the fact that Mr. Ramirez was driving in tandem with another car. Again, that's not inherently dangerous. There's nothing in the record to indicate that they were driving dangerously close together or something along those lines. The government points to the fact that Mr. Ramirez decelerated to 60 miles per hour. Again, the record shows the speed limit was 75 miles per hour. A lot of people slow down when they see a police vehicle, which is what happened in this case. The agent was originally stationary and saw Mr. Ramirez slow down after he saw him. And again, there was light traffic, and there's nothing to indicate that there was a minimum speed requirement. So the general Texas transportation code would apply that says you can't drive so slowly that you impede other traffic, but here we don't have evidence of Mr. Ramirez impeding other traffic. The government also points to the swerving in and out of the driving lanes, but there's nothing to indicate that the driving was out of control. And in Rodriguez, the driver had actually made a U-turn across the median of the interstate, and this court held that that was insufficient to apply the enhancement because there wasn't evidence that it was heavily trafficked, so the U-turn was actually dangerous. And that's similar to this case where there isn't evidence that the swerving was actually creating a danger. And again, the criminal complaint at page 9 of the record, the agent described the situation as the driver again decreased his speed and began swerving in and out of the lane he was traveling in. So again, no indication that he was driving out of control or something along those lines. And as far as the driver's license, as I said, the driver in Costello, Palma didn't have a driver's license. And here the driving situation was easy. He was driving a sedan on a highway between cities with light traffic and the roads were dry. So that makes this case very different than the Luton case where this court affirmed the enhancement when an 81-year-old was driving or was flying a plane without a pilot's license. Mr. Ramirez was 19, so there's no indication that he had failing eyesight due to age or anything along those lines. And obviously driving a car is much more straightforward than flying an airplane. So for all those reasons, we would ask the court to reverse and remand for resentencing. And if the court doesn't have any questions, I have reserved time for rebuttal. Thank you, counsel. Thank you. Thank you, Your Honors. May it please the court. My name is Brent Chappell, and I represent the United States in this matter. And we are asking this court to affirm the district court's judgment and sentence because there was no plane error in the application of enhancements under sections 2L1.1B6 and 3C1.2 of the sentencing guidelines. First of all, I want to remind the court that it is plane error review. So the critical issue in this case is going to be that second prong of plane error, whether any error was clear and obvious, whether it was subject to a reasonable dispute. So if this court assumes, as Ramirez has argued, that it should limit its consideration to Ramirez's conduct before he fled from police, there's no clear and obvious error because Ramirez's conduct, including the manner in which he was driving, the conditions in which he was driving, and the unique arrangement of his passengers, made it more likely than not that he created a substantial risk of serious vital injury or death to his passengers. Now, as this court is aware, it is not limited to those three specific reasons in paragraph 26 of the PSR. It can consider the entirety of the PSR, first, because the district court adopted the entirety of the PSR in all of its facts, and second, because this court can uphold on any ground supported by the record. So Ramirez focuses his argument on a line of cases, four or five cases, in which there's what could be phrased as insubstantial overcrowding with unrestrained passengers in a cargo area of an SUV or a minivan, but there are three critical distinctions between this case and those cases that show that those cases do not apply to this case, and thus there is a lack of clear precedent on point, and thus there is no clear and obvious error here. The first distinction is the existence of dangerous and reckless driving behavior, which is heightened, the danger of which is heightened by unsafe driving conditions. The PSR, primarily in paragraph 7 and 18, provides that Ramirez was serving between lanes in tandem with another vehicle at highway speeds. So just because the speed limit is 75 miles per hour doesn't mean that it's still dangerous to drive at highway speeds, especially when you couple that with driving in tandem with another vehicle, a larger vehicle, it was a pickup truck, while swerving between lanes. We also know that the vehicle was exhibiting... All right, but there were cases which would indicate that swerving between lanes wouldn't trigger the enhancement. Your Honor, I believe there's one case in which the facts included swerving between lanes, and that would be the Hernandez case, and the Hernandez case is an unpublished opinion, so it's not precedent for this Court. Granted, I certainly recognize that Judge Costa was on that panel, so I'm not suggesting this Court throw that case in the trash. Just ignore it. No, don't ignore it, Your Honor. There are still distinctions at play here, namely that in the Hernandez case, the opinion itself contained no driving facts, it stated that the operative facts were having three people over capacity in an SUV with someone restrained in a non-passenger area, but other than that distinction, there's no evidence of dangerous driving, there's no other traffic on the roadway. So that's very distinct from this case in which there's a vehicle riding in tandem and separately there's light traffic on the roadway. There's nothing in that... There was nothing that I saw in the briefs in that case regarding it being on a highway or driving at any high amount of speed, and the vehicle was not exhibiting any sort of abnormal bounce. And the abnormal bounce in this case was large enough that it caught the attention of the  It was part of the reason why they stopped the vehicle. So, we also know that there were unsafe driving conditions that heightened the danger posed by that dangerous driving. That includes the fact that we have an unlicensed driver who had previously been involved in a crash, who drove over 50 miles from Sullivan City, this was at night, in a dark roadway, in a heavy-laden vehicle again. Now I recognize that some of these facts are in other cases, but we can't just cherry-pick facts from other cases, we need to look at the totality of the circumstances. In most cases, people are stuffed in the cargo area, not even seats, that we say doesn't support this. I mean, that seems far more dangerous than here, they're in seats, there's one person I think, sort of laying on the other people, but why, if this is, to me this is less dangerous than putting people in the cargo area. If cargo area is not, doesn't support the enhancement, how does this? I disagree, Your Honor, and that brings me to my second distinction, the first one being the arrangement of the passengers. In those cases, you had an SUV or a minivan, a larger vehicle, they're in the cargo area lying down. They're effectively surrounded by four walls, you have a seat in front of them, three walls on either side. In this case, let's put it this way, I never put my kids in the back of the van, I do put them in the seats, and I've even, when you know, oh we've got to drive just to, from baseball practice, I'm at home, you do sort of stuff people in this, but I would never put my kids in the cargo area. So how's that not more dangerous? I mean, I don't. I mean, who puts their kids or anyone they care about in the cargo area of a vehicle? Well, there are many reasons why you wouldn't put a kid in a cargo area of a vehicle, but I also doubt that you would put your kid lying horizontally across three unrestrained adults, and that's what we have in this case. The question is, which is more dangerous? We just see it differently. That's fine, but I think it's not even close if the cargo area is more dangerous. Let me try to explain. And I don't think it takes an expert to consider what I would think is basic physics. When you have four unrestrained passengers, one lying horizontally across the other, in the event of a high impact crash, which is more likely with the dangerous driving facts that I discussed before, those seated individuals are necessarily going to go up and out. And so, likewise, the individual lying horizontally is also going to go up and out, and may even be propelled by those individuals under him. And then, the difference between this four-door small sedan and the large cargo areas of SUVs and minivans is that there's open. There's a windshield in front of them. There are two bucket seats in an open space and a windshield. So the risk of ejection is higher, in my opinion, Your Honor. And so, this isn't the same as Kyler. I recognize that, where Kyler was the open bed of a pickup truck, and the risk of ejection was high, and that was enough to support this enhancement. But if we have a spectrum of cases, the government's position is that this is in the middle. We have cargo area surrounded by four walls, with more space, and we have open bed of a pickup truck, and somewhere in the middle is tight space, someone lying across others, when all of them are unrestrained, with a windshield, and the risk of ejection. And, again, you couple that with riding in tandem at highway speeds, swerving between lanes. But you keep saying riding in tandem. You're referring now to a second vehicle. I am. So he's going to be punished because there was another driver driving the same way he was. Well, the way the record reads suggests that they're riding in tandem together, on purpose. But they're in different vehicles. They were in different vehicles. Well, he can't. I mean, he's not controlling what's happening in the other vehicle, so you're going to enhance his sentence based on someone else's bad driving? No, Your Honor, the bad driving was Ramirez's. He's the one who was swerving in his lane. He is the one who has the abnormal boundaries. Well, when you say he was driving in tandem with the other driver, when he did bad things, the other driver didn't do those. I'm sorry, will you repeat that? You said he was driving in tandem. I thought you said he was driving in tandem with another vehicle. That's correct. Being driven by someone else. Correct. So when he was doing the swerving, that vehicle didn't swerve when he swerved? Nothing in the record shows either way, Your Honor. All right. So, well then, how is the driving in tandem such a bad thing? Because when you couple the swerving between lanes at high speeds with someone driving in tandem, you're more likely to be in an accident. And that is one of the factors from the Zuniga-Amezketa case, is the risk of danger in the event of an accident. And there's also light traffic on the roadway. So they're not the only two cars around. But inherently, if you were swerving out of your lane, and there's a car next to you, that's more likely to hit that car next to you than if you're staying in your lane. The one he's driving in tandem with, or someone else? I just don't understand how things are worse if you're telling me the person he's driving in tandem with is not... When he does something illegal, then that person doesn't do that, but they're driving in tandem. And that makes his conduct worse. I'm talking about the risk of danger posed to the passengers. When you're in tandem with another vehicle, you're necessarily in close proximity to another vehicle. So that is distinct from an empty roadway. In most of these cases that Ramirez has relied upon, there's no evidence of any other traffic on the roadway. And so if you swerve out of your lane on an empty roadway, that's probably no big deal. But if you swerve out of your lane and there's a car right next to you, that's more dangerous. And so in addition to the arrangement being dangerous, in addition to the dangerous and reckless driving, we also have the fact that the majority of the cases relied upon by Ramirez are under plain error review. And again, the critical issue here is that second prong, whether it's clear and obvious. It's not just de novo review. It's whether it's clearly and obviously an error. And I want to touch on the additional facts that are here. Because if this court is not convinced, there is an alternative ground that this court could uphold the application of the enhancement on. And that is considering additional facts that occurred during flight. Again, the issue is, is this subject to reasonable dispute? We do have these double counting provisions. But it's important to read the text of those double counting provisions. The words have to have meaning. Comment three from guideline 201.1 says that if subsection B6 applies solely on the basis of conduct related to fleeing from a law enforcement officer, do not apply 3C1.2. The corollary provision in 3C1.2 says do not apply 3C1.2 where the offense guideline in guideline 201.1 results in a greater increase solely on the basis of the same conduct. And so if you couple the dangerous driving, the overloaded conditions, the abnormal bounce, the driving in tandem, the seating arrangement with the high speed over 100 mile an hour, 14 mile chase, I think that this court could easily get to upholding the application of the B6 enhancement. Now, I recognize that in cases in which this court has considered the dual application of sentencing enhancements involving the same continuous course of conduct, the court has looked at the temporal and spatial distinctiveness in the conduct as well as the distinctiveness of the harms at play. But this court could get there because there are temporal and spatial distinctions here and there are separate harms in play. If the court views the B6 enhancement exactly how I just described, including the preflight conduct as well as the conduct on the highway, the high speed chase on the highway, you can separate that temporally and spatially with the conduct occurring off the highway on the frontage road after the police turned their emergency lights off where there was a collision at an intersection where Ramirez ran a red light. And that caused serious bodily injury to a bystander. So it's a different location. It's a different time. We also have a different harm. We harmed a bystander as opposed to posing a risk of harm to the passengers. So this is an alternative ground on which this court could uphold the sentencing enhancement on plain air review. But to do that, we still have to find that the preflight conduct was reckless. You don't have to find that it's reckless to know, Your Honor. I'm saying you have to consider it so that it's not, so that the enhancement is not solely related to. Why? And I'm considering it for what purpose? What do you mean I have to consider it? Part of the totality of the circumstances in applying the B6 enhancement. Did you make this argument in your brief? I thought the brief sort of accepted the temporal that you have to look at each individually and then you just, as you've argued for many minutes here, say that the temporally distinct part does support the enhancement. I disagree that the brief accepted it. The brief assumed as much. However, this argument was still set forth because subsequent facts were relied upon in the issue statement, subsequent facts were relied upon in the summary of the argument, and I also cited Boca Negra Rodriguez, which is a case in which this court upheld both the 3C1.2 enhancement and the 201.1B6 enhancement. And I have to be honest, I've searched for other cases in which this court has applied both of those enhancements over this, involving the same course of conduct, and I only found three of those cases. All three of them were unpublished. All three of them have distinguishing facts and the court did appear to view one as an overcapacity issue. But the analysis is scant, and in all three cases, the court upheld the application of both enhancements. So I could not find any case in which this court vacated any enhancement based on these double counting provisions as it related to 3C1.2 and subsection B6. So just like my first argument, arguing that there are distinctions that removes this from any sort of applicable precedent, there are also, there's also no clearly applicable precedent to the double counting argument. And for that reason. The pre-sentence report in this enhancement did rely only on the pre-flight conduct, right, in the actual PSR. The probation officer did. Right. Yes, Your Honor. But again, this court can uphold on any ground supported by the record. So are you basically saying the district court could have applied B6 to all of the conduct without having the enhancement and still come within the 30 to 37 months range? It depends on how the court approaches it. Because if you just focus on. So if it's reversed and remanded, that could happen. Yes, Your Honor. Yes, in theory. But to finish, what I wanted to say, and I'm sorry, is just to say that if the court just looks at the word solely, if we're looking at the text of the enhancement, or the double counting provisions, if you consider everything, it's not solely related to the conduct during flight. It's not solely related to the conduct. It's also related to the swerving, the abnormal balance. Again, where is that argument in your brief? I understand the argument you're making now. So I don't. I didn't see it in the brief. It's not a long brief to read. Again, it's relied on the fact. It's relied on in the summary of the argument and the issue statement. But also, I believe there's a sentence. I can give you the page number. A sentence? There is a sentence that cites Bocanegra Rodriguez. And Your Honor, I'd be happy to engage in supplemental briefing on this issue. This is what it comes to. This is what we rely on. I understand, Your Honor. But again, I would request that this court allow us to engage in supplemental briefing on the issue, if that's how this court is going to turn. But the most straightforward and direct analysis would just be to go with the pre-flight conduct and to consider, again, those three critical distinctions between this case and the cases relied upon by Ramirez and find that there's no clear and obvious error, no clear and obvious precedent, and it's at least subject to reasonable dispute. Now, I do want to touch on another point on the fact that if this court finds that an error exists and it wants to vacate one of these sentencing enhancements, I know that Ramirez has challenged the B6 enhancement. But the double-counting provisions do not prohibit the application of the B6 enhancement. It's just the 3C1.2 enhancement. So worst-case scenario for the government, at least, would be a vacation of the two-level enhancement as opposed to the six-level enhancement. I just wanted to make that very clear. And if there are no further questions, I'm Thank you, Counsel. Thank you. Rebuttal. This is a new argument that the government is making that they didn't make in their brief as far as these flights related to the facts related to the flight from law enforcement. The government didn't squarely concede in their brief, but they definitely made that assumption that only the pre-flight facts were at issue here. They did cite the Boca Negra case. But in that case, the two enhancements, the B6 and the 3C1.2, were both applied. And the B6 was based on the fact that there were 17 people in a 12-person car and also that there was an unsecured infant, which is obviously a lot more dangerous by itself. So that was clearly pre-flight conduct or conduct that was independent from the reckless driving during flight. I would also note that in this case, Mr. Ramirez did receive a separate enhancement for causing bodily injury under 2L1.1B7. And that was related to the crash that happened with the Sierra. And so in that case, I would argue that the anti-double-counting provision in 3C1.2 application notes would apply. And that crash and that injury, since he already got enhancement under B7, would also be impermissible double-counting. And also, the government focuses on the word solely. But in the application note, it does say related to flight. And there's an application note 3 to 3C1.2, which says specifically that during flight should be defined broadly. So my argument would be that that would cover all of the flight facts from the 14-mile high-speed chase. And then the PSR says that as the agents were turning off their lights, they were about to give up is when he ran the red light. And then there's a statement by Mr. Ramirez afterwards that says that he was distracted by the border patrol. And that was why he ran the red light and caused the accident. So this has to be obvious. If it's obvious, you're saying it should be obvious to us. Why wasn't it obvious to the, I know it wasn't you, to the person in your office? I mean, I just always am amazed by this. I mean, this isn't the case of the century. It's not the most complicated pre-sentence report. You get it. You look. And you see, oh, there's three or four enhancements here. That's going to be the whole ballgame at sentencing. You think, is there a problem with one of these? The experienced public defender didn't think there was? I mean, I just don't, how does that not get objected to in trial court? And now it's the most obvious, worst error in the history of sentencing. I do think it's an obvious error in this case because there are so many cases where this court has reversed application on the same facts that were in PSR paragraph 26. I don't have an excuse for why we missed that. I really wish we wouldn't have because I think it was a very winnable objection in the district court. And instead, there was an objection to a bodily injury enhancement that was not a good objection. So we should have absolutely made an objection to this. And I think then we would have had a guidelines range most likely of 30 to 37 months instead of 37 to 46 months. And now we have this sentence of 37 months that the district court already imposed and wouldn't have been on the table previously. So I don't have an excuse. It's obvious under this court's case law that the facts in PSR paragraph 26 can't justify the B6 enhancement. One other thing I wanted to point out in my remaining time was the new case in Costello-Palma that talks about the dearth of facts that shows that the seat configuration was actually dangerous. And I think that same standard can apply to this case. There was some swerving. They were driving in tandem. There was an abnormal bounce. But there's a dearth of facts that show that those things were actually substantially increasing the risk of injury beyond what would be faced by unrestrained passengers in the cargo area of a vehicle where this court has repeatedly said that that's insufficient. And of course, Judge Costa, I would agree with you that I think it's much more dangerous to have people in a space that's not designed for people than people in a space that is designed for people, even if it's too many people in that space. And so for no further questions, we'd ask that the court vacate and remand for resentencing. All right. Thank you. The court will take this matter under review.